**United States District Court**
**District of Massachusetts**

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| v. | ) | |
| | ) | **Criminal Action No.** |
| **JOHN H. MCHUGH and THOMAS KUHN,** | ) | **12-10184-NMG** |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM & ORDER**

**GORTON, J.**

This case involves charges of conspiracy to distribute marijuana, money laundering and extortion against co-defendants John McHugh ("McHugh") and Thomas Kuhn ("Kuhn"). On July 29, 2014, the Court issued an Order denying defendants' motion to suppress taped recordings of defendants' conversations with a government cooperator (to whom the Court will refer by his initials, "CO"). The Court's ruling was made on the papers without an evidentiary hearing.

Defendant McHugh subsequently filed a motion to reconsider and moved for an evidentiary hearing.[1] McHugh claims that "the benefit of newly discovered evidence" now shows that the tapes were made in violation of United States v. Vest, 639 F. Supp. 899 (D. Mass. 1986). Vest is the leading case in the First Circuit Court of Appeals for the proposition that an intercepted

---

[1] Defendant Kuhn was allowed to join McHugh's motion to suppress which is now attributed to both defendants.

- 1 -

recording made for an impermissible purpose under 18 U.S.C. § 2511(2)(d) should be suppressed.

The Court scheduled a two-hour evidentiary hearing which was held on October 24, 2014. For the following reasons, defendant McHugh's motion to reconsider will be allowed but upon such reconsideration defendants' motion to suppress will again be denied. The recordings of the conversations between defendants and CO will not be suppressed pursuant to 18 U.S.C. § 2511(2)(d) and are therefore admissible against both McHugh and Kuhn.

I. **Background**

In July, 2012, McHugh was arrested pursuant to an indictment that charged conspiracy to distribute marijuana and conspiracy to launder and conceal proceeds of marijuana trafficking.

In October, 2013, McHugh was charged in a superseding indictment, which added as Count Three a charge of conspiracy to collect debt by extortionate means. That charge also names co-defendant Kuhn.

Defendants' motion to suppress arises from testimony and recordings made by CO, who was the alleged target of the extortion conspiracy under Count Three. From 2007 to 2009, CO routinely purchased large quantities of marijuana from McHugh. In January, 2010, McHugh agreed to fund CO's indoor marijuana-

2

growing operation in Maine.  In return, CO was to produce marijuana for McHugh.  McHugh allegedly invested approximately $238,000 in cash in what turned out to be a largely unsuccessful operation that produced a dismal total of just less than 20 pounds of marijuana over more than 18 months.  During that time, McHugh expressed frustration with the project and CO frequently tried to explain to him the supposed difficulties of the operation and possible ways to rectify it.

By early fall 2011, McHugh lost patience with the project. He began to demand reimbursement of his investment and made increasingly serious threats against CO.  CO alleges that McHugh visited his residence in Maine and threatened to kill him and his family.  He testified that it was this encounter with McHugh that made him begin to fear for his life and prompted his decision to buy a recording device and preserve evidence of McHugh's behavior.  CO was also apparently aware that McHugh was being investigated by federal authorities at the time he purchased the recording device.  In an attempt to shield himself, CO changed the phone number of the cellular phone he used to communicate with McHugh.

Between the Fall of 2011 and January, 2012, CO surreptitiously recorded two phone conversations and two in-person meetings with McHugh and preserved various text messages exchanged between the two.  He also used the recording device to

3

record a variety of other events, including college lectures that he attended in Maine.

During the first recorded phone conversation, McHugh and CO discussed the various problems with the project before McHugh explicitly threatened to kill CO and his family, stating

> I'll [f...ing] kill you! You understand! Shut the [f...] up! You [f...ing] know to [sic] much. I don't care where the [f...] you go. I'll [f...ing] kill your family you [f...ing] here [sic] me. You got three months. I'll call you when we're coming up.

A second in-person meeting between CO and McHugh was also recorded, although the recording does not indicate that McHugh threatened CO. CO testified, however, that McHugh did in fact threaten and assault him later during that meeting but only after CO had put the device in his vehicle when he became concerned that McHugh would see it.

Furthermore, CO recorded his final in-person meeting with McHugh at Faneuil Hall in January, 2012. During that meeting, McHugh was accompanied by co-defendant Kuhn. CO testified that McHugh threatened him, demanded reimbursement of his debt and hit CO in the face, although the audio recording and the government's transcript of that recording do not indicate that CO was hit at any point during the meeting. McHugh also told CO that the debt had been assigned to co-defendant Kuhn, stating

> Right now you owe $200,000. I gave ... the debt [] to these guys [i.e., Kuhn] ... [Y]ou were my friend for a little while so I don't want them to knock your teeth

4

> out.  But they will.  They're going [sic] smash your
> [f...ing] teeth out.  They know where your mom lives,
> where your wife's mom lives, they know everything
> about you ... You're going [sic] pay them, or they're
> going to come get you.  Bottom line.

The three men then discussed problems surrounding the project before McHugh ended the conversation by indicating that Kuhn would "come see" CO within the next few months, presumably to collect a portion of the debt owed by him.

In August, 2012, after McHugh's initial indictment, law enforcement agents interviewed CO pursuant to a proffer letter. During that interview, the agents downloaded all of the audio files from CO's recording device.  The government has indicated that at trial it will introduce those recordings as evidence against defendants and that it has not charged CO with any criminal acts.

II. **Analysis**

The Court's July, 2014 Order found that CO did in fact fear for his life and recorded his conversations with McHugh to memorialize evidence of McHugh's threats.  Defendants had originally contended that CO made the recordings to create a record of the marijuana growing operation and to blackmail McHugh for additional funding.  Defendants also asserted that recordings made without consent of both parties violate Massachusetts law and thus were also made for an impermissible purpose under 18 U.S.C. § 2511(2)(d).  The Court rejected those

5

arguments and held that CO's recordings were not made for an impermissible purpose that would warrant suppression. United States v. McHugh et al. ("McHugh I"), No. 12-cr-10184-NMG, 2014 WL 3798834, at *7-11 (D. Mass. July 29, 2014).

McHugh now contends that new evidence shows three impermissible motives for CO's recordings: (1) to create a "receipt" of the terms of CO's criminal indebtedness to McHugh (already rejected by the Court in its previous Order), (2) to retain self-servingly the recordings as "leverage" against McHugh in the event CO was caught and (3) as protection against future prosecution for CO's involvement in the conspiracy. The Court views the latter two arguments as essentially the same.

McHugh further argues that the new evidence disproves the government's theory that CO recorded the conversations out of fear for his own safety. Defendant contends that his "aggressive language" and threats toward CO and his family were misinterpreted. McHugh claims CO scoffed at his threats, was not fearful of him and, in fact, "provoke[d] [McHugh's] outbursts." Defendant also contends that the two alleged assaults committed by him against CO are not supported by the recordings nor are they substantiated by any other evidence.

As such, McHugh claims that this "newly discovered evidence" shows that CO's tape recordings were made solely for multiple, impermissible purposes in violation of § 2511(2)(d)

and should therefore be suppressed. See Vest, 639 F. Supp. at 901-09.

Moreover, defendant Kuhn asserts that, while CO may have had a valid, self-protective purpose to record his conversations with McHugh, he lacked such a justification as to Kuhn. Kuhn thus contends that the recordings should, at least with respect to him, be suppressed.

**A.  Legal Standard**

Defendants moved to suppress the use of CO's recordings pursuant to 18 U.S.C. §§ 2510 et seq., the Wiretap Statute, Title III of the Omnibus Crime Control and Safe Streets Act of 1968 ("Title III"). If defendants establish a violation of Title III, any intercepted communications are inadmissible at trial. United States v. Mavroules, 813 F. Supp. 115, 117 (D. Mass. 1993) (citing 18 U.S.C. § 2515).

Section 2511(1) of Title III prohibits the interception and disclosure of wire, oral or electronic communications "except those specifically provided for in the Act." United States v. Giordana, 416 U.S. 505, 514 (1974). One such exception is embodied in the one-party consent rule, which enables a person who is not acting under color of law to lawfully intercept a wire or oral communication if that person is a party to the communication. 18 U.S.C. § 2511(2)(d). In its July, 2014 Order,

the Court found that CO consented to the intercepted communications. McHugh I, 2014 WL 3798834, at *2.

The one-party consent rule does not apply, however, if the recording party intercepted the communication "for the purpose of committing any criminal or tortious act." 18 U.S.C. § 2511(2)(d). A defendant bears the burden of proving that the purpose of making the recording was impermissible under § 2511(2)(d). United States v. Cassiere, 4 F.3d 1006, 1021 (1st Cir. 1993) (citation omitted). To satisfy that burden and prove an impermissible purpose, a defendant must establish that either the "primary motivation" or a "determinative factor" in the actor's decision to record was the intent to commit a criminal or tortious act. Mavroules, 813 F. Supp. at 121 (citing Vest, 639 F. Supp. at 904). That factor must be present at the time of the recording. See Caro v. Weintraub, 618 F.3d 94, 100 (2d Cir. 2010).

Because the defendant bears the burden of proof, "the risk of non-persuasion" remains with the defendant. Vest, 639 F. Supp. at 907 (citation omitted). The government is not required to prove that CO made the recordings for a permissible purpose. Id. at 904.

**B. Application**

The Court notes at the outset that it credits CO's testimony that he bought the recording device and created the

8

recordings once he began to fear for his own safety in light of McHugh's threatening behavior. CO's recordings plainly illustrate that McHugh was prone to erratic behavior and explicit threats and CO's testimony that prior, similar threats led him to begin to record his conversations with McHugh is credible. Nevertheless, the Court will continue to examine briefly the arguments raised by McHugh in his motion to reconsider. See McHugh I, 2014 WL 3798834, at *3 (noting that in "mixed motive" situations finding a lawful purpose is alone not determinative if a defendant establishes that the recording party also acted with an impermissible purpose).

First, McHugh argues that CO's recordings were made to create a "receipt" of CO's criminal indebtedness to McHugh. McHugh contends that Vest stands for the proposition that a recording made for the purpose of creating a "receipt" of criminal transactions represents an impermissible purpose under § 2511(2)(d). See 639 F. Supp. at 907 (finding that a recording made to create a "receipt" entailed an impermissible purpose of furthering a criminal conspiracy). Defendant, however, continues to overlook a fundamental additional factor present in Vest but absent on the facts of this case.

In Vest, the court found that the "receipt" was made to blackmail the recorded individual to ensure his performance in a bribery scheme. Id. (recording receipt of payment was to be used

9

"to force [the recorded party] to fulfill his end of the bargain"); see also United States v. Jiau, 734 F.3d 147, 152 (2d Cir. 2013) (characterizing Vest as principally standing for the proposition that a recording made for the purpose of blackmailing the recorded party violates § 2511(2)(d)). Unlike Vest, there is simply no evidence in the record that at the time CO taped his conversations with McHugh he had any intention (or reason) to blackmail McHugh or that he ever threatened to do so.

Importantly, the impermissible purpose exception within § 2511(2)(d) "is to be construed narrowly." Jiau, 734 F.3d at 152. An impermissible purpose is properly confined to situations where the recording party intended to harm the recorded party, either through blackmail, threats or public embarrassment. Id. (citation omitted). Thus, § 2511(2)(d) turns on the purpose for recording the communication, not the purpose of the communication itself. Id.

As this Court has already explained, merely creating a "receipt" of an illegal, criminal transaction is not a violation of § 2511(2)(d). McHugh I, 2014 WL 3798834, at *4; see also Vest, F. Supp. at 907 ("the mere fact that the substance of a conversation concerns criminal activities does not in itself lead to the conclusion that the taping of a such a conversation is also a criminal act"). Instead, the defendant must show that the "receipt" of the illegal transaction was recorded for an

<u>independent</u> impermissible purpose.  McHugh has repeatedly failed to carry his burden of proof when pursuing his "receipt" argument.

Accordingly, the tape recordings will not be suppressed on the ground that they were made to create a "receipt" of his criminal debt.

McHugh also contends that the newly discovered evidence shows that CO made the tapes to escape prosecution which qualifies as an impermissible purpose under § 2511(2)(d).  The recordings were, he suggests, "insurance" and "leverage" against McHugh that could be used as protection against future prosecution.

McHugh's argument here can quickly be dispatched.  As much as defendants might wish it to be true, the fact that CO successfully managed to avoid prosecution in the face of his criminal behavior does not necessitate suppressing the recordings.  Making a tape recording for possible use at a later date in hopes of avoiding prosecution is undoubtedly a permissible, "self-protective" purpose that does not run afoul of § 2511(2)(d).  <u>Vest</u>, 639 F. Supp. at 907; <u>United States</u> v. <u>Zarnes</u>, 33 F.3d 1454, 1469 (7th Cir. 1994) (recordings were made for "lawful purpose" of possibly turning over to authorities with the hope of obtaining a more favorable deal if recording party was caught).  The recordings help to ensure that a

11

recording party can create a proper record of any conversations and thereby prevent future distortions by co-conspirators. See Cassiere, 4 F.3d at 1021. As such, recordings made for self-protection are not impermissible under § 2511(2)(d). Vest, 639 F. Supp. at 907 (citing United States v. Ruppel, 666 F.2d 261, 271 (5th Cir. 1982)).

Consequently, the tape recordings will not be suppressed on the ground that they are self-protective and subsequently helped CO avoid prosecution.[2]

Finally, defendant Kuhn contends that the recordings may have been made to memorialize threats made against CO by McHugh but that CO lacked such a permissible purpose as to Kuhn. CO had never met Kuhn prior to the meeting at Faneuil Hall and therefore, Kuhn argues, "cannot assert self-protection as the basis for his illicit recording of [] Kuhn." Kuhn overlooks, however, the essential fact that he carries the burden to show affirmatively that CO made the recordings for an impermissible purpose. Vest, 639 F.3d at 904, 907. Kuhn has failed to establish any such impermissible purpose and, in conclusory fashion, simply characterizes CO's recordings as "illicit." CO need not have feared an assault by Kuhn in order to have a

---

[2] In a supplemental filing, McHugh proposes that CO's ultimate motive in the Fall of 2011 was to "persuade" him to sink more money into the operation but he doesn't establish how that motive would be an impermissible purpose under § 2511(2)(d).

12

permissible, self-protective purpose for recording his conversation. For the same self-protective purpose discussed above, CO was permitted to record his conversation with Kuhn. See Cassiere, 4 F.3d at 1021; Vest, 639 F. Supp. at 907. Thus, the Court similarly will not suppress the recordings as to defendant Kuhn.

**ORDER**

For the foregoing reasons, defendant McHugh's motion for reconsideration (Docket No. 217) of this Court's July, 2014 Order (Docket No. 214) is **ALLOWED** but upon reconsideration defendants' motion to suppress (Docket No. 194) is again **DENIED**. At trial, the government will be permitted to introduce the cooperator's recordings of his conversations with defendants McHugh and Kuhn.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated November 5, 2014